1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

RANDOLPH CYPRIAN,

Plaintiff,

v.

DANIEL WHITE et al,

Defendants.

11
12
13
14

CASE NO. 3:19-cv-05047-JLR-JRC

REPORT AND RECOMMENDATION

NOTED FOR: April 16, 2021

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge J. Richard Creatura. Presently before the Court is defendants' motion for summary judgment. Dkt. 37.

Plaintiff brings this lawsuit against five defendants alleging that he was inappropriately involved with a correctional officer, defendant Hiles. Based on the involvement with defendant Hiles, plaintiff contends that defendant Hendershot threatened plaintiff. Plaintiff contends that defendants DePew, White, and Germeau violated plaintiff's due process and Eighth Amendment rights in their handling of the investigation into plaintiff's involvement with defendant Hiles.

While the Court does not take plaintiff's allegations of sexual misconduct lightly, plaintiff, proceeding *pro se* and then through counsel, failed to timely serve defendants Hiles,

1    Hendershot, or DePew. Therefore, the Court recommends that defendants Hiles, Hendershot, and

2    DePew be dismissed without prejudice.

3         After affording plaintiff multiple opportunities and extensions to present evidence to

4    rebut defendants White and Germeau's motion for summary judgment, the Court concludes that

5    plaintiff has failed to show that a genuine issue of material fact exists regarding plaintiff's Eighth

6    Amendment failure to protect claim and equal protection and due process claims. In sum, plaintiff

7    repeatedly denied any involvement with defendant Hiles. When he changed course and reported an

8    inappropriate involvement several months later, there was no substantial risk of serious harm.

9    Thus, plaintiff has failed to demonstrate that the actions of defendants Germeau and White resulted

10   in any constitutional violation. Accordingly, the Court recommends that defendants' motion for

11   summary judgment be granted and that this action be dismissed with prejudice against

12   defendants White and Germeau.

13   **I.    Background**

14        Plaintiff, a former inmate with the Washington Corrections Center ("WCC") filed his

15   amended complaint on May 31, 2019 while housed at Airway Heights Corrections Center. Dkt. 11.

16   Plaintiff's allegations are based on events which occurred at WCC. *Id.* Plaintiff alleges that he and

17   former corrections officer, defendant Jo Hiles were inappropriately involved. Dkt. 11. The Court

18   uses the term "involvement" throughout this Report and Recommendation but makes no

19   determination on the specific nature of the involvement between plaintiff and defendant Hiles or

20   whether the involvement was consensual or coerced.

21        Plaintiff alleges that defendant Hiles' former colleague, corrections officer Samantha

22   Hendershot, threatened and manipulated plaintiff based on her knowledge of his involvement with

23   defendant Hiles. Dkt. 11. Plaintiff alleges that defendant Germeau did not properly investigate

24

1    plaintiff's involvement with defendant Hiles. Dkt. 11 at 2-4. Plaintiff alleges that defendant White

2    allowed defendant Hiles' conduct and allowed plaintiff to be housed in unsafe conditions after the

3    alleged misconduct occurred. *Id.* Plaintiff contends that defendants' actions violate constitute

4    violations of due process, equal protection, and the Eighth Amendment. *Id.* Plaintiff seeks damages

5    in the amount of $5 million dollars and injunctive relief. Dkt. 11.

6         On August 5, 2019, defendants Germeau and White filed the first motion for summary

7    judgment. Dkt. 19. Plaintiff was granted an extension to respond to the motion. Dkt. 27, 28. In

8    January 2020, mail addressed to plaintiff was returned as undeliverable, and the Clerk's Office was

9    advised that plaintiff had been released from AHCC and into DOC community custody in Everett,

10   Washington. *See* Dkt. Entry dated January 21, 2020. On January 22, 2020, attorney Jacinta S.

11   Ritchie entered an appearance on behalf of plaintiff and filed a stipulated motion for extension to

12   respond to defendants' first motion. Dkt. 30.

13        On April 8, 2020, defendants White and Germeau withdrew their first motion, Dkt. 34, and

14   filed an answer, Dkt. 35. The Court entered a pretrial scheduling order, ordering that discovery be

15   completed by September 9, 2020 and dispositive motions were due by October 9, 2020. Dkt. 36.

16   On April 29, 2020, defendants White and Germeau filed their second motion for summary

17   judgment hereinafter ("defendants' motion") and supporting evidence. Dkt. 37-41 (Declarations of

18   Michelle Young, Candace Germeau, Tiffany Little, and Daniel White). On May 22, 2020, after an

19   extension, plaintiff filed his response and a declaration in opposition. Dkt. 44, 45 (Cyprian

20   Declaration). In the response, plaintiff argued that additional discovery was needed to prove all

21   elements of the case. Dkt. 44 at 7.  On May 29, 2020, defendants White and Germeau filed their

22   reply. Dkt. 46.

23

24

On June 24, 2020, the Court re-noted defendants' motion for July 31, 2020 and allowed plaintiff to file a supplemental response addressing what evidence was needed to support his opposition and offer sufficient facts demonstrating that the evidence sought exists in order to meet the requirements for the Court to grant a continuance pursuant to Federal Rule of Civil Procedure 56(d). Dkt. 48. Over the course of the next several months, the parties stipulated to numerous extensions. *See* Dkt. 49, 50, 52, 54, 55, 56. However, plaintiff failed to file a supplemental response addressing the elements of Rule 56(d). *See* Dkt. On November 5, 2020, the Court ordered the parties to file a status report on or before December 10, 2020. Dkt. 57. Plaintiff's status report sought additional time because plaintiff had contracted COVID-19 and was in quarantine. Dkt. 60. Plaintiff also indicated that counsel had difficulty obtaining additional discovery. *Id.* The Court granted plaintiff a final extension until March 5, 2021 to file the supplemental response pursuant to Rule 56(d). Dkt. 61.

On March 8, 2021, four days before defendants' motion was ready for the Court's consideration, plaintiff's counsel filed a notice of withdrawal. Dkt. 64. The Court found that the notice did not comply with Local Rule 83.2(b)(1) and denied the request without prejudice. Dkt. 65. Plaintiff did not file a supplemental response pursuant to Rule 56(d) or request any further extensions. *See* Dkt. Therefore, defendants' motion is now ready for the Court's consideration. *See* Dkt. 37.

## II.     Unserved Defendants – Hendershot, Hiles, and DePew

On June 4, 2019, the Court directed service of plaintiff's *pro se* amended complaint on the named defendants: Hendershot, Hiles, DePew, White, and Germeau. Dkt. 11, 12. The Clerk's Office e-mailed the amended complaint and waiver of service forms to each defendant. Dkt. 12. Defendants Germeau and White filed service waivers, and counsel entered an appearance on

their behalf. Dkt. 14, 15. The Attorney General's Office filed notices stating that defendants DePew, Hiles, and Hendershot are not currently employed by the Department of Corrections ("DOC"). Dkt. 16, 18, 37 (defendant DePew could not be identified as a current *or* former DOC employee, thus, the Court did not request counsel for defendants White and Germeau to file a last known address). On August 7, 2019, defendants White and Germeau filed the last known addresses of defendants Hiles and Hendershot, and the amended complaint was served on defendants Hiles and Hendershot at the new addresses, but the waivers were not returned. Dkt. 17, 22, 24. *See also* Dkt. 48 (ordering plaintiff, through counsel, to provide the last known addresses of defendants Hendershot and Hiles).

In January 2020, plaintiff's attorney entered an appearance. Dkt. 30. Plaintiff, through counsel, did not seek any additional time to obtain the proper service addresses or to effect service of defendants Hendershot, Hiles, or DePew. *See* Dkt. To date, defendants Hendershot, Hiles, and DePew have not returned service waivers. *See* Dkt.

Plaintiff has the general duty to prosecute his case. *Fid. Philadelphia Tr. Co. v. Pioche Mines Consol., Inc.,* 587 F.2d 27, 29 (9th Cir. 1978). Further, a court cannot exercise jurisdiction over a defendant without proper service of process. *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R .Civ. P. 4"). Thus, when an IFP plaintiff fails to provide the Court with accurate and sufficient information to effect service of the summons and complaint, it is appropriate for the Court to *sua sponte* dismiss the unserved defendant. *Walker v. Sumner,* 14 F.3d 1415, 1421-22 (9th Cir. 1994) (quoting *Puett v. Blanford*, 912 F.2d 270, 275 (9th Cir. 1990), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995)). Once plaintiff was represented by counsel, a private

1    litigant or attorney of record shall make appropriate arrangements with a person authorized to

2    serve process. *See* Local Rule 4(c); 4.1(a) ("As set forth in LCR 4, the United States Marshals

3    Service is relieved from any and all civil process serving responsibilities within this district on

4    behalf of private litigants….").

5         Prior to the notice of appearance by plaintiff's counsel, plaintiff did not provide the Court

6    with a current service address for defendants Hendershot, Hiles, or DePew. Without a correct

7    address for defendants Hendershot, Hiles, and DePew this Court could not perfect service. *See*

8    Dkt. 12, 16, 18, 22, 24, 48. After the appearance of plaintiff's counsel in January 2020, plaintiff

9    still failed to effect service. Plaintiff has not offered any efforts made to serve defendants Hiles,

10   Hendershot, or DePew, either while proceeding *pro se* or through his attorney. Further,

11   plaintiff's response to defendants' motion does not offer detail as to any attempts to serve

12   defendants Hiles, Hendershot, or DePew or seek any additional time to effect service. *See* Dkt.

13   44. Accordingly, the Court recommends that defendants Hendershot, Hiles, and DePew be

14   dismissed without prejudice from this action for plaintiff's failure to prosecute. *See* LCR 4, 4.1.

15   **III.    Summary Judgment Standard of Review**

16        Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

17   file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

18   movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

19   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

20   showing on an essential element of a claim in the case on which the nonmoving party has the

21   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

22   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

23   the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

24

1  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

2  metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

3  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

4  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

5  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

6  626, 630 (9th Cir. 1987).

7  **IV.    Materials for consideration**

8          As an initial matter, the Court notes that plaintiff's amended complaint was filed while he

9  was proceeding *pro se* and is signed under the penalty of perjury. *See* Dkt. 11. Subsequently,

10  plaintiff retained counsel and filed a declaration, also signed under penalty of perjury, as evidence

11  in response defendants' motion for summary judgment. *See* Dkt. 11, 44, 45. Therefore, the Court

12  will treat both the amended complaint and the declaration as evidence submitted in opposition to

13  defendants' motion for summary judgment. *See Schroeder v. McDonald,* 55 F.3d 454, 460 (9th

14  Cir. 1995) (A verified complaint or prior motion signed under penalty of perjury may be

15  considered an affidavit in opposition to a motion for summary judgment to the extent that it sets

16  forth facts within the plaintiff's personal knowledge that are admissible into evidence.); *see also*

17  *Jones v. Blanas,* 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause [the plaintiff] is pro se, we must

18  consider as evidence in his opposition to summary judgment all of [the plaintiff's] contentions

19  offered in motions and pleadings, where such contentions are based on personal knowledge and

20  set forth facts that would be admissible in evidence, and where [the plaintiff] attested under

21  penalty of perjury that the contents of the motions or pleadings are true and correct.").

22          Attached to the reply, defendants submit a second declaration from defendant Germeau.

23  Dkt. 47.  In general, a court will not consider evidence submitted for the first time in reply

24

1   without giving the opposing party an opportunity to respond. *Provenz v. Miller,* 102 F.3d 1478

2   (9th Cir. 1996) (the district court should not consider new evidence presented in a reply without

3   giving the non-movant an opportunity to respond). Evidence submitted in direct response to

4   evidence raised in the opposition, however, is not "new." *Terrell v. Contra Costa County,* 232 F.

5   App'x 626, 629 n. 2 (9th Cir. 2007) (evidence adduced in reply was not new where "[t]he Reply

6   Brief addressed the same set of facts supplied in Terrell's opposition to the motion but provides

7   the full context to Terrell's selected recitation of the facts"). Plaintiff does not dispute the

8   admission of defendant Germeau's second declaration or argue that the evidence raised for the

9   first time in the reply should not be considered by the Court. *See* Dkt. Upon the Court's own

10  review, defendant Germeau's second declaration is directly responsive to plaintiff's argument in

11  the opposition related to the investigation into a 2017 anonymous report that plaintiff and

12  defendant Hiles were inappropriately involved, *see* Dkt. 44, 45, 46, 47, therefore the second

13  declaration is properly submitted in a reply.

14  **V.    Evidence**

15          The majority of the facts presented by plaintiff and defendants are undisputed. Because

16  the Court recommends dismissal of the unserved defendants Hiles, Hendershot, and DePew, and

17  the motion for summary judgment is only filed on behalf of defendants White and Germeau, the

18  Court focuses on the evidence relevant to defendants White and Germeau. *See* Dkt. 37.

19          Plaintiff asserts that he and defendant Hiles were inappropriately involved between 2016

20  until August 2017. Dkt. 11 at 1-2; Dkt. 45, Cyprian Declaration at 1-3. On May 9, 2017, an

21  unknown person submitted an anonymous kite to non-party correctional unit supervisor Bobby

22  Greene. Dkt. 39, Germeau Declaration at ¶ 7; Dkt. 47, Germeau Second Declaration. The

23  anonymous kite alleged that plaintiff and defendant Hiles had been "passing notes and carrying

24

1    out a relationship." *Id.* Defendant Germeau was not assigned to investigate the allegation, and

2    does not know who was assigned, but was informed that the claim could not be substantiated. *Id.*

3    Plaintiff states that defendant Hiles told him that someone had reported their involvement and

4    that the two were under investigation. Dkt. 45, Cyprian Declaration at 2-3. Plaintiff states that he

5    was not interviewed or asked any questions regarding the investigation. *Id.*

6          On August 4, 2017, a staff member at WCC reported that defendant Hendershot, was

7    suspected of being inappropriately involved with an inmate, A.G, and that defendant Hiles was

8    aware of their involvement. Dkt. 39, Germeau Declaration at ¶ 3; Dkt. 40, Little Declaration,

9    Attachment E, *Investigation Report* at 1; Dkt. 41, White Declaration at ¶ 4; Dkt. 45, Cyprian

10   Declaration at 3. WCC Investigators non-party Steve DeMars and defendant Candace Germeau

11   were assigned to investigate defendant Hendershot's involvement with A.G. Dkt. 39, Germeau

12   Declaration at ¶¶ 3-4; Dkt. 40, Little Declaration, Attachment E; Dkt. 41, White Declaration at ¶

13   4.

14         Defendant Hendershot admitted a romantic involvement with A.G. but denied that the

15   involvement was sexual. Dkt. 39, Germeau Declaration at ¶ 4; Dkt. 40, Little Declaration

16   Attachment E; Dkt. 41, White Declaration at ¶ 5. Defendant Hendershot resigned from her

17   position with the DOC on August 4, 2017 and A.G. was transferred to a different facility. Dkt.

18   39, Germeau Declaration at ¶¶ 3-4; Dkt. 40, Little Declaration, Attachment E; Dkt. 41, White

19   Declaration at ¶ 5; Dkt. 45, Cyprian Declaration at 2-3.

20         After defendant Hendershot admitted her romantic involvement with A.G., defendant

21   Germeau began investigating whether defendant Hendershot's colleagues were aware of, but

22   failed to report, their knowledge of defendant Hendershot's involvement with A.G. Dkt. 39,

23   Germeau Declaration at ¶ 5. Defendant Germeau listened to recordings of telephone

24

1    conversations between A.G. and defendant Hendershot, wherein they repeatedly referenced

2    defendant Hendershot's "sister." Dkt. 39, Germeau Declaration at ¶ 6; Dkt. 40, Little

3    Declaration, Attachment E. Because defendant Hiles worked in the same housing unit, defendant

4    Germeau began investigating whether defendant Hiles was the individual identified as defendant

5    Hendershot's "sister." Dkt. 39, Germeau Declaration at ¶ 6; Dkt. 40, Little Declaration,

6    Attachment E.

7        Defendant Germeau also heard A.G. discussing messages from "R" to defendant

8    Hendershot's "sister." Dkt. 39, Germeau Declaration at ¶ 6; Dkt. 40, Little Declaration at ¶ 6,

9    Attachment E. Based on the prior anonymous report, defendant Germeau suspected that plaintiff

10   was "R." Dkt. 39, Germeau Declaration at ¶ 7 (at the time the report was received, it could not be

11   substantiated). On August 9, 2017, plaintiff was placed in administrative segregation pending

12   investigation of his involvement with A.G., defendant Hendershot, and defendant Hiles. Dkt. 38,

13   Declaration of Michelle Young, Attachment A, *Inmate Transfer Sheet* at 2; Dkt. 39, Germeau

14   Declaration at ¶ 8. The same day, defendant Hiles was placed on administrative leave. *Id.* at ¶ 8.

15       After plaintiff was placed in segregation, defendant Germeau interviewed plaintiff asking

16   about A.G., defendant Hendershot, and defendant Hiles. Dkt. 39, Germeau Declaration at ¶ 9,

17   Attachment A, *Interview Summary*. Plaintiff states that defendant Germeau told plaintiff he

18   would remain in administrative segregation indefinitely until the investigation was complete.

19   Dkt. 45, Cyprian Declaration at 3-4. Plaintiff states that defendant Germeau was "very rude" to

20   him and told plaintiff that "she wasn't there for me, she was there for them." Dkt. 45 at 3

21   ("them" meaning the correctional officers). Plaintiff states that defendant Germeau made him

22   feel powerless, belittled him, and talked to plaintiff with disrespect. *Id.* Plaintiff states that

23   defendant Germeau "made it seem like she was not going to believe what I had to say and that

24

1  she was not concerned with my protection." *Id.* Plaintiff states that he did not want to share his

2  story with anyone because he did not feel safe. *Id.*

3      During the interview with defendant Germeau, plaintiff admitted that he was "R" and that

4  he had sent a message—"I miss her and I'm okay"—to defendant Hiles through A.G. and

5  defendant Hendershot. Dkt. 39, Germeau Declaration at ¶ 10, Attachment A. However, plaintiff

6  denied having a romantic or sexual involvement with defendant Hiles. Dkt. 39, Germeau

7  Declaration at ¶ 9, Attachment A. Rather, plaintiff stated that defendant Hiles would cry and talk

8  to him about her son, but that was it. Dkt. 39, Germeau Declaration at ¶ 9, Attachment A.

9      On August 23, 2017, non-party Investigator Tiffany Little was assigned to formally

10  investigate whether defendant Hiles was aware of and failed to report defendant's Hendershot's

11  involvement with A.G. Dkt. 40, Little Declaration at ¶ 4, Attachment A, *Assignment*

12  *Memorandum* at 1; Dkt. 39, Germeau Declaration at ¶ 11; Dkt. 41, White Declaration at ¶ 6.

13  Once Ms. Little was assigned to investigate defendant Hiles, defendant Germeau was no longer

14  involved with that aspect of the investigation and did not have any further contact with plaintiff.

15  Dkt. 39, Germeau Declaration at ¶ 11; Dkt. 40, Little Declaration at ¶ 4.

16      In September 2017, Ms. Little interviewed plaintiff as part of her investigation. Dkt. 40,

17  Little Declaration at ¶ 5, Attachment B, *Cyprian Interview—09/14/17*. Again, plaintiff denied

18  having any romantic or sexual involvement with defendant Hiles. Dkt. 40, Little Declaration at ¶

19  5, Attachment B at 10, 11, 12, 16, 17, 18. Plaintiff also denied he was "R" and said he did not

20  know who "R" was. Dkt. 40, Little Declaration, Attachment B at 14.

21      Two days after this interview, plaintiff was moved from administrative segregation to

22  general population. Dkt. 38, Young Declaration, Attachment A. While housed in general

23  population, plaintiff states that other correctional officers would make comments to him such as

24

"look at the victim, there goes the victim" Dkt. 45, Cyprian Declaration at 6. Plaintiff states that non-party officer Davis called him "the heavy weight lover." *Id.* Plaintiff states that other officers would come to his cell and ask if defendant Hiles "actually did it." *Id.* Plaintiff states that he felt unsafe and harassed. *Id.* Plaintiff states that there is a "culture of silence" and that staff members would not tell on each other, even though they knew of the inappropriate relationships between prisoners and correctional officers. *Id.* at 6. Plaintiff states that he was fearful of retaliation and further discriminatory treatment. *Id.* at 6.

Two months later, plaintiff was transferred to a different DOC facility. Dkt. 38, Young Declaration, Attachment A.  Plaintiff states that he did not feel safe enough to make a complaint until he was transferred. Dkt. 45, Cyprian Declaration at 6-7. In January 2018, about four months after he was interviewed by Ms. Little, plaintiff reported that he and defendant Hiles had any sexual involvement  at WCC. Dkt. 40, Little Declaration at ¶ 7, Attachment E; Dkt. 45, Cyprian Declaration at 7-8. Based on this new report, defendant White expanded Ms. Little's assignment to include an investigation into defendant Hiles' involvement with plaintiff. Dkt. 40, Little Declaration at ¶ 7, Attachment C, *Assignment Memorandum—Revised* at 1; Dkt. 41, White Declaration at ¶ 7.

Ms. Little interviewed plaintiff again on January 30, 2018. Dkt. 40, Little Declaration at ¶ 8, Attachment D, *Cyprian Interview—01/30/18*. In contrast to what he had told defendant Germeau and Ms. Little a few months earlier, plaintiff now stated that defendant Hiles coerced him into an unwanted sexual involvement and smuggled tobacco into the facility for him. Dkt. 40, Little Declaration at ¶ 8, Attachment D. Plaintiff also accused defendant Hendershot of flirting with him and giving him tobacco. *Id.* During this interview, plaintiff stated that he did ask Sergeant Kapola, why he was in the "hole," but admitted that he had not reported defendant

1   Hiles' or defendant Hendershot's alleged misconduct when it was happening. Dkt. 40, Little

2   Declaration at ¶ 8, Attachment D; Dkt. 45, Cyprian Declaration at 6-8 (spelled "Capolla").

3   Plaintiff states that while in segregation, he sent notes to unidentified counselors and asked them

4   what was going on, but they responded that they did not know. Dkt. 45, Cyprian Declaration at 5.

5   Plaintiff states that he sent defendant DePew a note and he never responded. *Id.* Plaintiff also

6   stated that correctional officers taunted, teased, and subtly threatened him after he returned to

7   general population at WCC, but plaintiff admitted that he had not reported that either. Dkt. 40,

8   Little Declaration at ¶ 8, Attachment D.

9       Ms. Little interviewed multiple individuals and followed up on each of plaintiff's

10  allegations, but she was unable to find any evidence of any sexual involvement between plaintiff

11  and defendant Hiles. Dkt. 40, Little Declaration at ¶ 9; Dkt. 41, White Declaration, Attachment

12  A, *Investigative Findings*. However, Ms. Little did find that defendant Hiles had been

13  unprofessional with plaintiff. Dkt. 40, Little Declaration at ¶ 9; Dkt. 41, White Declaration,

14  Attachment A. Defendant White reviewed and signed a Prison Rape Elimination Act ("PREA")

15  form finding that defendant Hiles had engaged in unprofessional misconduct but that the PREA

16  allegations were unsubstantiated. Dkt. 41, White Declaration at Attachment A. Defendant Hiles

17  resigned from the DOC on June 11, 2018. Dkt. 40, Little Declaration at ¶ 9. Plaintiff was

18  released from prison on October 23, 2019. Dkt. 38, Young Declaration, Attachment A.

19      Plaintiff states that he suffers from anxiety and depression from the mental and emotional

20  trauma caused by the involvement with defendant Hiles. Dkt. 11 at 6; Dkt. 45, Cyprian

21  Declaration at 5-7.

22

23

24

1

**VI.    Discussion**

2        Defendants White and Germeau contend that they are entitled to summary judgment

3 because: (1) plaintiff has failed to show that defendants personally participated in any conduct that

4 allegedly violated plaintiff's constitutional rights and (2) no genuine issue of material fact exists

5 regarding plaintiff's Fifth, Eighth, or Fourteenth Amendment claims. Dkt. 37.

6        To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

7 violation of rights protected by the Constitution or created by federal statute, and (2) the

8 violation was proximately caused by a person acting under color of state law. *See Crumpton v.*

9 *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

10 identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266,

11 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

12 named defendants caused, or personally participated in causing, the harm alleged in the

13 complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d

14 1350, 1355 (9th Cir. 1981).  Sweeping conclusory allegations against an official are insufficient to

15 state a claim for relief. *Leer*, 844 F.2d at 633.

16        **A.  Improper Investigation – Defendant Germeau**

17        Plaintiff alleges that defendant Germeau failed to conduct a proper investigation. Dkt. 11 at

18 2-3. Defendants argue that defendant Germeau's actions do not rise to the level of a constitutional

19 violation. Dkt. 37 at 8-9.

20        With respect to plaintiff's allegations that defendant Germeau made him feel "belittled"

21 and stated that she was there for the correctional officers, claims of verbal harassment or verbal

22 abuse of prisoners by guards do not, by itself, state a constitutional deprivation under 42 U.S.C. §

23 1983. *Oltarzewski v. Ruggiero,* 830 F.2d 136, 138 (9th Cir. 1987); *See Keenan v. Hall,*

24

1   1083, 1092 (9th Cir. 1996) (comments by a prison official that denied prisoner "peace of mind"

2   do not state a constitutional claim).

3          In addition, plaintiff's allegations about the quality of defendant Germeau's investigation

4   as to defendant Hendershot and A.G. are also insufficient to demonstrate a constitutional

5   violation because prisoners do not have a constitutional right to a specific grievance or

6   investigation procedure. *See Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates

7   lack a separate constitutional entitlement to a specific prison grievance procedure.") (citing

8   *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988); *Willis v. Lappin*, 2012 WL 4987764, at *21

9   (E.D. Cal. Oct. 17, 2012), *report and recommendation adopted,* 2013 WL 1151979 (E.D. Cal.

10  Mar. 19, 2013) (complaints about the quality of an investigation did not state an Eighth

11  Amendment claim).

12         And even if plaintiff had a constitutional right to a proper investigation, he has not

13  explained why or how defendant Germeau's investigation was not proper or what she failed to

14  investigate. Defendant Germeau was not assigned to investigate plaintiff's involvement with

15  defendant Hiles. Rather, Ms. Little was assigned to that task. Dkt. 40, Little Declaration at ¶ 4.

16  Defendant Germeau's only involvement with plaintiff was one interview related to her

17  investigation of the involvement between defendant Hendershot and A.G. Dkt. 39, Germeau

18  Declaration at ¶ 9. During this interview, plaintiff denied any involvement with defendant Hiles.

19  *See id.* Plaintiff has not presented any allegations or evidence that he tried to report any

20  misconduct to defendant Germeau while it was ongoing. *See* Dkt. 11; Dkt. 39, Germeau

21  Declaration. Rather, plaintiff told Ms. Little that the inappropriate sexual involvement with

22

23

24

1  defendant Hiles occurred *after* defendant Germeau was no longer investigating the issue and

2  plaintiff had been transferred. Dkt. 40, Little Declaration.

3        In his opposition to defendants' motion, plaintiff also challenges the handling of the

4  anonymous report received in May 2017. Dkt. 44, 45, Cyprian Declaration. Plaintiff argues that

5  this report shows that defendant Germeau had knowledge of the alleged misconduct and failed to

6  act. *See* Dkt. 44, 45. However, defendant Germeau has presented evidence that she did not have

7  any role in investigating the May 2017 anonymous report. Dkt. 47, Second Germeau Declaration

8  (non-party Greene received the report), and plaintiff has failed to submit admissible evidence

9  otherwise. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that section 1983

10  action requires a showing of personal participation in alleged constitutional violation).

11        Accordingly, a review of the evidence, viewed in the light most favorable to plaintiff,

12  fails to show that defendant Germeau personally participated in any alleged constitutional

13  violation related to her investigation. Plaintiff has failed to demonstrate a genuine issue of

14  material fact as to this claim against defendant Germeau. The Court recommends defendants'

15  motion be granted as to plaintiff's claims against defendant Germeau.

16          **B.  Failure to Protect – Defendant White**

17        In the amended complaint, plaintiff alleges that defendant White, Superintendent of WCC,

18  had an obligation to protect plaintiff from sexual misconduct of corrections officers. Dkt. 11 at 4.

19  Plaintiff alleges that defendant White failed to protect plaintiff by allowing plaintiff to be housed in

20  segregation and placed under "threat to staff as if plaintiff was the perpetrator." Dkt. 11 at 4.

21  Plaintiff alleges that defendant White failed to protect plaintiff by placing plaintiff in general

22  population and not transferring plaintiff to another institution. Dkt. 11 at 4. Defendants argue that

23

24

1   there is no genuine issue of material fact regarding whether defendant White violated plaintiff's

2   Eighth Amendment rights. Dkt. 37.

3        "[A] prison official may be held liable under the Eighth Amendment for denying humane

4   conditions of confinement only if he knows that inmates face a substantial risk of serious harm

5   and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*,

6   511 U.S. 825 (1994). The duty to protect a prisoner from serious harm requires that prison

7   officials take reasonable measures to guarantee the safety and well-being of the prisoner. *Id.* at

8   832–33; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir.1 998).

9        To sustain a failure to protect claim on summary judgment, the inmate must demonstrate

10  that he was incarcerated under conditions posing a substantial risk of harm and that prison

11  officials were deliberately indifferent to those risks. *Farmer,* 511 U.S. at 834; *Frost,* 152 F.3d at

12  1128; *Redman v. County of San Diego,* 942 F.2d 1435, 1443 (9th Cir. 1991). "[A] prison official

13  cannot be found liable under the Eighth Amendment . . . unless the official knows of and

14  disregards an excessive risk to inmate health or safety; the official must both be aware of facts

15  from which the inference could be drawn that a substantial risk of serious harm exists, and he

16  must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074,

17  1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have

18  perceived but did not," therefore, cannot "be condemned as the infliction of punishment."

19  *Farmer*, 511 U.S. at 838.

20       The evidence reflects that plaintiff did not report defendant Hiles or defendant

21  Hendershot's alleged misconduct while it was occurring. Dkt. 40, Little Declaration, Attachment

22  D; Dkt. 45, Cyprian Declaration at 7-8.  Nor did plaintiff report the alleged intimidation or

23  threats by staff while housed at WCC, either in segregation or general population. Dkt. 45,

24

1  Cyprian Declaration at 6-7. Dkt. 40, Little Declaration at ¶ 5, 6, 7, 8; Attachment D. To the

2  contrary, as noted above, plaintiff denied it, when asked.

3          Thus, even viewing the evidence in the light most favorable to plaintiff, he does not

4  allege or set forth evidence that defendant White was aware of any substantial risk to plaintiff

5  based on his involvement with defendant Hiles. Rather, the evidence contains only general

6  assertions that defendant White should have known of the risk to plaintiff because defendant

7  White is the WCC Superintendent and it is his job to know of risks of serious harm. *See* Dkt. 11

8  at 4. However, there is no evidence showing that defendant White was aware that plaintiff would

9  be exposed to a particularized risk of serious harm at WCC, either in administrative segregation

10 or general population. *See Wright v. Contreras*, 2012 WL 834859, at *5 (S.D. Cal. Mar. 12,

11 2012) (citing *Farmer*, 511 U.S. at 834 n.8) ("it is not enough that a reasonable person would

12 have known the risk and that the defendant should have known; rather, the defendant must have

13 acted or failed to act despite knowing of a substantial risk of serious harm"); *also Nelson v. Pima*

14 *Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not

15 create a factual dispute for purposes of summary judgment.").

16         And once plaintiff did raise his allegations several months later, defendant White

17 assigned Ms. Little to investigate the claims. Dkt. 41, White Declaration at ¶ 7; Dkt. 40, Little

18 Declaration, Attachment C. At that time, plaintiff had been transferred to another facility,

19 defendant Hendershot had resigned, and defendant Hiles was on administrative leave. Dkt. 40,

20 Little Declaration. Dkt. 39, Germeau Declaration. There is no evidence that plaintiff was at risk

21 of any future harm. Thus, there is no evidence that defendant White participated in the alleged

22 misconduct in any way or was aware of the alleged misconduct and failed to protect plaintiff.

23

24

1    In his declaration submitted in opposition to defendants' motion, plaintiff states that many

2    staff members knew of the inappropriate involvement between plaintiff and defendant Hiles but

3    made no efforts to report. Dkt. 45, Cyprian Declaration. Plaintiff also points to the fact that he

4    questioned a non-party officer while in administrative segregation about why he was in

5    segregation. *See id.* However, plaintiff does not identify the staff members who purportedly knew

6    about their involvement and failed to act. Nor does plaintiff make any similar allegations against

7    the named defendants. Thus, none of this evidence demonstrates that defendant White had any

8    knowledge of a substantial risk and failed to act. To be liable, the defendant must have

9    committed an affirmative act, participated in another's affirmative act, or failed to perform an act

10   that she was legally required to do. *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978). "A

11   supervisor is only liable for the constitutional violations of his subordinates if the supervisor

12   participated in or directed the violations or knew of the violations and failed to act to prevent

13   them." *Taylor*, 880 F.2d at 1045.

14   Plaintiff also challenges the handling of the anonymous report received in May 2017 that

15   plaintiff and defendant Hiles were inappropriately involved. Dkt. 44, 45, Cyprian Declaration.

16   Even assuming defendant White was aware of the anonymous report, the report was investigated

17   and could not be substantiated. Dkt. 47, Second Germeau Declaration. In addition, the evidence

18   reflects that in plaintiff's interview with Ms. Little, plaintiff admitted that he never reported the

19   inappropriate conduct with defendant Hiles or the conduct that occurred after his return to general

20   population at WCC. Dkt. 40, Little Declaration. Something more is needed to allow the Court to

21   infer that defendant White knew of a substantial risk of serious harm to plaintiff and failed to act.

22   *See Berg v. Kincheloe,* 794 F.2d 457, 461 (9th Cir. 1986) (internal quotation omitted) (The Ninth

23   Circuit has noted that in balancing an awareness of a prison's unstable and potentially dangerous

24

1    environment with other concerns, "officials may face a number of choices, each posing potential

2    dangers to the prisoner and others. Choosing the optimal 'prophylactic or preventative' measures

3    to prevent violence and maintain safety is difficult and not readily susceptible to judicial

4    evaluation.").

5        For these reasons, plaintiff's amended complaint and declaration do not establish facts

6    within plaintiff's knowledge which create a material issue of triable fact. Accordingly, the Court

7    recommends that defendants' motion be granted as to plaintiff's failure to protect claim against

8    defendant White.

9    **VII.    Equal Protection**

10        In the amended complaint, plaintiff alleges that defendant White violated his Fourteenth

11    Amendment right to equal protection Dkt. 11 at 4.

12        The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all

13    persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living*

14    *Center*, 473 U.S. 432, 439 (1985). To bring a successful equal protection claim, a plaintiff must

15    show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S.

16    229, 239 (1976). For this differential treatment to give rise to a claim under 42 U.S.C. § 1983,

17    "one must show intentional or purposeful discrimination." *Draper v. Rhay*, 315 F.2d 193, 198

18    (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful

19    discrimination"). A successful equal protection claim may be brought by a "class of one" when

20    the plaintiff alleges that he has been intentionally treated differently from others similarly

21    situated and there is no rational basis for the difference in treatment. *Village of Willowbrook v.*

22    *Olech*, 528 U.S. 562, 564 (2000).

23        Plaintiff has not alleged or presented any evidence that defendant White's action were

24    based on plaintiff's membership in a protected class. Although unclear, it appears that plaintiff

REPORT AND RECOMMENDATION - 20

alleges that another inmate, A.G. were similarly situated, but A.G. was transferred immediately. *See* Dkt. 11. However, even if plaintiff and A.G. were similarly situated, plaintiff has failed to present evidence showing that there was discriminatory intent or purpose behind the actions of defendant White. *See Draper*, 315 F.2d at 198; *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) (Plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."); *Thornton v. Schwarzenegger*, 2008 WL 5412361, at *3 (E.D. Cal. Dec. 30, 2008), *subsequently aff'd*, 430 F. App'x 615 (9th Cir. 2011) (stating "[s]afety concerns about individual prisoners would have a rational relation[ship] to a legitimate penological purpose" and finding the plaintiff did not sufficiently allege he was transferred because he was part of a protected class).

For these reasons, the Court finds that plaintiff has not overcome defendants' summary judgment showing that defendant White did not violate plaintiff's Fourteenth Amendment equal protection rights. Therefore, the Court recommends that defendants' motion be granted as to plaintiff's equal protection claim.

## VIII.  Due Process

Plaintiff alleges that defendants White and Germeau violated his Fifth Amendment rights to due process. Dkt. 11 at 4. However, the Fifth Amendment's Due Process Clause applies only to actions of the federal government—not to those of state or local government. *Lee v. City of L.A.*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)). Defendants White and Germeau are state employees, not federal actors. *See* Dkt. 39, Germeau Declaration at ¶ 2; Dkt. 41, White Declaration at ¶ 2. Accordingly, plaintiff Fifth Amendment due process claims against Germeau and White should be dismissed.

In an abundance of caution, the Court also interprets plaintiff's due process claim as arising under the Fourteenth Amendment. Dkt. 11 at 4. Pursuant to the Due Process Clause of the

1     Fourteenth Amendment, "no state shall 'deprive any person of life, liberty, or property without

2     due process of law.'" *Toussaint v. McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *overruled on*

3     *other grounds*, *Sandin v Conner*, 515 U.S. 472 (1995). The due process guarantees of the

4     Fourteenth Amendment thus "apply only when a constitutionally protected liberty or property

5     interest is at stake." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993).

6         Here, plaintiff has only set forth conclusory allegations of a denial of due process and

7     fails to set forth the necessary elements. Dkt. 11. He has not identified how defendants White or

8     Germeau violated his due process rights, or somehow deprived him of a liberty or property

9     interest. Plaintiff has not stated or developed any factual or legal support for a due process claim.

10    *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1061 (9th Cir. 2011) ("To

11    survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts,

12    not sweeping conclusory allegations.").

13        To the extent plaintiff generally challenges his placement in administrative segregation,

14    ordinarily, administrative segregation in and of itself does not implicate a protected liberty

15    interest. *See Sandin*, 515 U.S. at 485-86. However, the ultimate inquiry is whether the

16    confinement imposes an atypical and significant hardship. *See id.* at 483-84; *Serrano v. Francis*,

17    345 F.3d 1071, 1079 (9th Cir. 2003). In his declaration in opposition to defendants' motion,

18    plaintiff states that he did not have access to file grievances while in administrative segregation and

19    argues this demonstrates a denial of due process. Dkt. 44 at 2; Dkt. 45, Cyprian Declaration.

20    However, plaintiff does not allege that defendants White or Germeau were responsible for denying

21    plaintiff the ability to file grievances. Instead, he accuses others of doing so. *See* Dkt. 44 at 4-5

22    (plaintiff asked non-party Sergeant Dion for grievance paperwork but was denied; non-party

23    correctional officer Capolla said that plaintiff will never get put back in mainline and that plaintiff

24

1  should have been transferred; defendant DePew failed to help plaintiff). *See Taylor v. List,* 880

2  F.2d 1040, 1045 (9th Cir. 1989) (holding that section 1983 action requires a showing of personal

3  participation in alleged constitutional violation). Aside the inability to file grievances, plaintiff

4  does not assert, or offer any evidence, that the conditions in administrative segregation were

5  materially different than those existing in general population. *See Sandin,* 515 U.S. at 485-86.

6  Thus, plaintiff has not presented any evidence that his placement in segregation while the

7  investigation was ongoing presented any atypical or significant hardship.

8      Therefore, the Court recommends that defendants' motion be granted, and that plaintiff's

9  due process claims be dismissed.

10  **IX.    Qualified Immunity**

11     As the Court has concluded that plaintiff failed to raise material issues of fact relating to

12  his constitutional claims, it is not necessary to address the question of qualified immunity.

13  **X.    Conclusion**

14     In conclusion, the Court finds that no genuine issue of material fact exists regarding

15  plaintiff's claims. Accordingly, the Court recommends that defendants White and Germeau's

16  motion for summary judgment (Dkt. 37) be granted. The Court further recommends that

17  defendants Hiles, Hindershot, and DePew be dismissed without prejudice.

18

19

20

21

22

23

24

1        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

4    review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

5    imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April

6    16, 2021, as noted in the caption.

7        Dated this 23rd day of March, 2021.

8

9

10

11                                         J. Richard Creatura
                                           United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24